The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which is incorporated herein by reference, and at and after the hearing, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff-employee on 21 November 1991.
3. Kemper Insurance Company was the carrier on the risk on 21 November 1991.
4. Plaintiff's average weekly wage on 21 November 1991 was $280.00, resulting in a compensation rate of $186.68 per week.
5. Plaintiff's medical records regarding this claim are admitted into evidence.
6. Plaintiff's unemployment benefit records are admitted into evidence.
7. The deposition testimony of Drs. Stephen J. Naso, Jr., A. J. DeFranzo, Francisco Naveira, and L. Andrew Koman is part of the evidentiary record.
8. The issues to be determined are what additional benefits, if any, is plaintiff entitled; whether defendants should pay plaintiff's medical care by Dr. DeFranzo; and whether plaintiff's current surgery request is causally related to his compensable injury.
***********
Based upon all of the competent evidence of record and reasonable inferences therefrom, the Full Commission finds as follows
 FINDINGS OF FACT
1. Plaintiff, a 34-year old male cook employed by defendant-employer, sustained a compensable injury by accident to his right hand on 21 November 1991 when he cut his right long finger with a knife.
2. On the date of the injury, plaintiff received treatment at the emergency room and Dr. Thomas Spangler performed surgery on plaintiff's right hand.
3. The parties entered into a Form 21 Agreement on 16 December 1991 which was approved by the Commission on 28 January 1992. Plaintiff received temporary total disability benefits from 29 November 1991 through 9 December 1991 when plaintiff returned to work for defendant-employer.
4. Plaintiff is a native of Alexandria, Egypt and has lived in the United States for approximately seven (7) years. Plaintiff trained and worked as an accountant in Egypt prior to coming to the United States. Furthermore, plaintiff has taken various business and accounting courses at Forsyth Community College.
5. Plaintiff worked continuously for defendant-employer from his return to work on 9 December 1991 until he was terminated on 17 May 1992. Plaintiff was terminated because he failed to work overtime when requested. Plaintiff was not terminated for reasons related to his compensable injury.
6. Dr. Spangler treated plaintiff regularly until April 1992 when plaintiff requested a change of physician. Defendants allowed plaintiff's request and initially requested that plaintiff see a hand specialist in Greensboro. However, plaintiff indicated he did not wish to travel to Greensboro. Therefore, defendants authorized plaintiff to treat with Dr. Koman at Bowman-Gray who is an expert in orthopaedic surgery with a specialty in hand and microsurgery.
7. Plaintiff underwent nerve conduction studies ordered by Dr. Koman. Dr. Koman found no evidence of reflect sympathetic dystrophy and specifically recommended that plaintiff not have surgery. Thereafter, Dr. Koman released plaintiff to return to work.
8. Plaintiff worked for the Holiday Inn as a desk clerk from 31 July 1992 until he was terminated in October 1992 for reasons unrelated to his compensable injury.
9. Plaintiff worked for a couple of temporary agencies in 1993. Additionally, plaintiff made $300.00 working at Mr. Barbeque in November 1994.
10. Plaintiff received temporary unemployment benefits after October 1992. However, these benefits were terminated when plaintiff represented himself as unable to work and applied for social security benefits.
11. The plaintiff sought treatment from Dr. DeFranzo without obtaining authorization from defendants. Dr. DeFranzo is a plastic surgeon with a certificate in hand surgery. Dr. DeFranzo and Dr. Koman were both at North Carolina Baptist Hospital. In November 1993 without consulting with Dr. Koman, Dr. DeFranzo performed surgery on plaintiff removing a neuroma in plaintiff's hand and immobilizing the nerve. Although Dr. DeFranzo's office contacted defendant-carrier to obtain prior approval for the surgery, the surgery was denied. Plaintiff did not contact defendant-carrier regarding approval for the surgery.
12. Initially, Dr. DeFranzo's surgery appeared to help. However, at the end of November 1994, plaintiff informed Dr. DeFranzo that he was back at work and the pain had returned. In order to decrease any possible nerve irritation, the plaintiff was placed on Elavil. In November 1994, when plaintiff complained to Dr. DeFranzo that he had aggravated his hand at work, he was not working for defendant-employer.
13. When plaintiff continued to complain, Dr. DeFranzo referred him to Dr. Naveira at the North Carolina Pain Center. This referral was as a result of the failed treatment of Dr. DeFranzo and the complications which resulted from Dr. DeFranzo's unauthorized surgery.
14. The plaintiff was also seen by Dr. Naso, an expert in hand and upper-extremity surgery, for an independent medical exam in June 1996. Dr. Naso originally indicated that plaintiff was unable to use his hand in any activity. This opinion was based on plaintiff's behavior and the manner in which plaintiff carried his hand in a guarded position. At that time, Dr. Naso found no evidence of reflex sympathetic dystrophy based on objective tests. Dr. Naso further found no objective basis for plaintiff's complaint of pain the way plaintiff described it. Dr. Naso's objective tests only revealed some tenderness in the fingers. Dr. Naso originally rated plaintiff with a fifty percent (50%) permanent partial impairment based solely on plaintiff's report of pain and his report he was unable to use his right hand at all. However, at his deposition, Dr. Naso changed the rating to a less than five percent (5%) permanent partial disability impairment to the fingers based on the additional evidence of the videos. Dr. Naso did not recommend any work restrictions.
15. Based on the Form 25R signed by Dr. Naso and submitted to the Commission after Dr. Naso's deposition and after the Opinion and Award filed by Deputy Commissioner Stephenson, plaintiff retains a permanent partial impairment of 5% to the middle finger and 5% to the ring finger.
16. Greater weight is given to the deposition testimony of Dr. Naso than that of plaintiff's other physicians. Dr. Naso's opinions considered what hand movement plaintiff is actually capable of doing rather than the plaintiff's own exaggerations.
17. Based on the observations of plaintiff at the hearing, including weighing his testimony as a whole and his demeanor, it was the opinion of the deputy that the plaintiff is not credible and is exaggerating his symptoms. The Full Commission adopts the finding of the deputy that plaintiff is not credible. Although the videotapes also support plaintiff's exaggerations, little weight is given to the videos alone. When plaintiff did not realize he was being observed in the courtroom by the deputy, he used his hand freely with no visual signs of pain. However, when the plaintiff knew he was under observation by the deputy, he held his hand in an immobile, very guarded fashion, close to his chest and often had grimaces on his face.
18. Plaintiff has been capable of earning wages since his termination from defendant-employer in May 1992 for causes unrelated to his injury. Plaintiff has not attempted to obtain employment, except for brief periods at Holiday Inn and Mr. Barbeque and with temporary agencies. Plaintiff also received unemployment benefits following his termination from Holiday Inn which was for reasons unrelated to his injury.
19. Plaintiff's credibility is so lacking that it rises to a level of material misrepresentation of facts in order to obtain workers' compensation. Although plaintiff originally suffered a compensable injury and required treatment, he extended and over-exaggerated further problems in order to receive additional benefits.
***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On 21 November 1991, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury on 21 November 1991, plaintiff is entitled to temporary total disability benefits from 21 November 1991 through 9 December 1991 at a weekly compensation rate of $186.68. Defendants have already paid these benefits to plaintiff. Therefore, plaintiff is not entitled to any further temporary total disability benefits. N.C. Gen. Stat. § 97-29.
3. Plaintiff was terminated from defendant-employer in May 1992 for reasons unrelated to plaintiff's compensable injury. Plaintiff is not entitled to any further temporary total disability following his termination.
4. Plaintiff is entitled to receive permanent partial disability compensation, subject to a reasonable attorney's fee, for the 5% impairment rating to his middle finger and for the 5% impairment rating to his ring finger. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to have defendants provide all medical treatment arising from the injury by accident to the extent it is reasonably necessary to effect a cure, give relief or lessen the period of plaintiff's disability. Defendants are not obligated to pay for the treatment of Dr. DeFranzo or Dr. Naveira of the Pain Center at North Carolina Baptist Hospital as it was unauthorized.Hyler v. GTE Products Company, 333 N.C. 258, 425 S.E.2d 698 (1993); N.C. Gen. Stat. § 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 AWARD
1. Plaintiff is not entitled to any further temporary total disability, as all amounts owing for the period 21 November 1991 through 9 December 1991 have been paid by defendants.
2. Defendants shall pay all authorized medical expenses incurred by plaintiff as a result of his compensable injury on 21 November 1991, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure. Defendants are not obligated to pay for the unauthorized treatment of Dr. DeFranzo and Dr. Naveira.
3. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff permanent partial disability compensation for the 5% rating to his middle finger, which yields 2 weeks, and for the 5% rating to his ring finger, which yields 1.25 weeks. Therefore, subject to a reasonable attorney's fee, defendants shall pay plaintiff a total of 3.25 weeks of permanent partial disability at the weekly rate of $186.68 amounting to $606.71.
A reasonable attorney's fee in the amount of 25% of the permanent partial disability compensation owed to plaintiff is hereby approved to be deducted and paid directly to counsel for plaintiff.
5. Defendants shall pay the costs due the Commission.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS:nwg